## ESTES v. FRY et al., Appellants.

**Division One, December 17, 1901.**

1. **Only One Final Judgment.** There can be but one final judgment in any case, although the court as a court of law, may try the petition's first count, which asks for a judgment on a promissory note, and as a court of equity may try the second count, which prays for a foreclosure of the deed of trust securing the note.

2. **Limitations:** SUIT ON NOTE: NONSUIT: NEW SUIT. A suit on a note, begun within one year after nonsuit in a former suit, which was itself begun within ten years after the last payment on the note, is not barred by limitations.

3. ————: ————: ————: AMENDMENT OF PLEADING. The original suit was begun within ten years after the last payment. But long

.after ten years had expired the plaintiff filed an amended petition, which in fact did not constitute an amendment, but was an attempted substitution of a new cause of action, in that' the original action was a plain suit at law on a promissory note, and the amended petition substituted a bill in equity for an accounting and a foreclosure of a deed of trust securing the note's payment. Defendant moved to strike out this amended petition, and thereupon plaintiff withdrew it and obtained leave to file his original petition, and afterwards suffered nonsuit, but within one year began this new action. *Held*, that the one year began to run, not from the date of the filing of the amended petition, but from the date of the nonsuit.

4. **Suit on Notes:** PAYMENTS: APPLICATION. Where the holder of a note does not apply payments to the maker's' other notes held by him, the law will apply them to the one in suit. Especially should this be done if the other notes have, at the time of the suit, been barred by limitations.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND JUDGMENT HERE.

*W. H. Biggs* and *Ball & Sparrow* for appellants.

(1) Under the pleadings and the evidence, the court should have given the declaration of law asked for by defendants, and its verdict and judgment should have been for defendants. First. The original suit was an ordinary action at law on a promissory note. The so-called amended petition was not an amendment, but a complete change of cause of action. It was changed from an action at law to one in equity. The same proof would not sustain both. Scoville v. Glasner, 79 Mo. 449; Lampkin v. Collier, 69 Mo. 170; Maloney v. Building Ass'n, 57 Mo. App. 384; Holliday v. Jackson, 21 Mo. App. 660; Sims v. Field, 24 Mo. App. 557; Phillips v. Broughton, 30 Mo. App. 148; Baker v. Railroad, 34 Mo. App. 98. Second. The filing of the amended petition, by plaintiff, was an abandonment, by him, of the original petition. Young v. Woolback, 33 Mo. 110; Hawkins v. Massee, 62 Mo. 552; Rand v. Grubbs, 26 Mo. App. 595; Ticknar v.

Voorhies, 46 Mo. 110. Therefore, when defendants filed their motion to strike out plaintiff's amended petition, and pending the consideration of same by the court, plaintiff asked and obtained leave to withdraw the same and the court at the same time sustained defendants' motion to strike out at that point, the plaintiff was out of court. Davis v. Hall, 90 Mo. 665; 3 Estes, Pleading, sec. 4778; Leese v. Sherwood, 21 Cal. 151. Third. The trial court erroneously permitted the plaintiff to refile his original petition. We know of no law permitting such practice, but if such be the law and the practice, the original petition having been abandoned by the plaintiff by filing an amended petition, the refiling of the original petition simply amounted to the re-institution of the suit, and the statute of limitations continued to run from March 10, 1873, the date of last payment on note, to the date of refiling original petition, to-wit, March 18, 1890. (2) The judgment rendered by the court against defendants is erroneous. It was a suit in equity. The only judgment the court could render was a judgment of foreclosure. The court could not legally render both a money judgment and also a judgment of foreclosure. Weary v. Wittmer, 77 Mo. App. 546; McClarg v. Phillips, 49 Mo. 315; Pemberton v. Johnson, 46 Mo. 342. (3) The court committed error in sustaining the findings and report of the referee. First. Because the findings and report of the referee are not responsive to the order of the court. Second. Because the referee passed upon notes not submitted to him. Third. Because the only matter referred to the referee was the note in suit of $1,000. Therefore, all the payments claimed to have been made and allowed by the referee should have been placed upon the note of $1,000 in suit. Fourth. Because the payments allowed by the referee, if credited on the $1,000 note, would more than pay it.

*Wm. H.* and *Davis Biggs* and *M. G. Reynolds* also for appellants.

(1)    Clearly the averments of the petition and answer make the action one of equitable foreclosure.    In such a case a judgment of foreclosure only is permissible.    On principle this must be true.    The action is *in rem,* in which a personal judgment is improper.    Fithian v. Monks, 43 Mo. 502; McClurg v. Phillips, 49 Mo. 315; Pemberton v. Johnson, 46 Mo. 342; Weary v. Wittmer, 77 Mo. App. 546.    (2)    The judgment against Fry's estate for the amount found by the referee to be due on the note was unauthorized for the further reason that the right of action on the note was barred by the statute of limitations.    The authorities are abundant that an amended petition which abandons the old cause of action and states a new one, is equivalent to the commencement of a new suit, which would necessarily operate as a dismissal of the original.    Hester v. Mullen, 107 N. C. 724; Crofford v. Cothran, 2 Sneed. 492; Railroad v. Carpenter, 27 Iowa, 487; Vanderzer v. McMullen, 28 Ga. 339; Holmes v. Trout, 1 McLean (C. C. U. S.), 10; Miller v. McIntyre, 1 McLean, 85; Dudley v. Price, 10 B. Mon. (Ky.), 84; Buel v. Transfer Company, 45 Mo. 562; Lottmann v. Barnett, 62 Mo. 159; Tilly v. Tobbein, 103 Mo. 477; Mann v. Scroer, 50 Mo. 306.    (3) But conceding that the nonsuit was suffered in the original suit, the one-year statute can not avail the plaintiff, for the reason that the new action must be the same as the old.    Here the original suit was a simple action at law on the note and the new suit was in equity to foreclose a mortgage alleged to have been given to secure the note.    The two actions were essentially different in character, and as we have attempted to show, admitted of essentially different judgments.

*W. M. Williams* and *Pearson & Pearson* for respondent.

(1) (a) The action or first count of plaintiff's petition is not barred by the statute of limitation, because it was commenced by plaintiff within one year from the date of the judg-

ment of dismissal of his suit, on the same note, and between the same parties, in the Ralls Circuit Court. Assuming that the filing of the amended petition was a dismissal or abandonment of plaintiff's former suit (which we do not concede), this present action would even then have been commenced within one year from such dismissal or abandonment, and would thereby, under the statute, be saved from the statute of limitation. R. S. 1889, sec. 4285; Lumber Co. v. Lumber Co., 72 Mo. App. 248; Bryan v. Fudge, 63 Mo. 389; Wood v. Mortman, 85 Mo. 304; State ex rel. v. O'Gorman, 75 Mo. 378; Chouteau v. Roose, 90 Mo. 165. (b) The action on the second count of plaintiff's petition could not, in any way, be barred by the statute of limitation, because it is an action in equity to foreclose a deed of trust, in the nature of a mortgage. Cape Girardeau County v. Harbison, Admr., 58 Mo. 90. (2) The second point in appellant's brief is not well taken, because this was not a suit in equity to foreclose a mortgage, asking a personal judgment over. It is a suit by a petition in two counts, stating two causes of action; one at law, the other in equity. It was so treated by the parties at the trial. Upon the first count there was entered a judgment establishing the demand against the estate of Jacob Fry, and costs were adjudged against the plaintiff. R. S. 1899, secs. 191 and 211. The second count is an equitable procedure for the foreclosure of a deed of trust in the nature of a mortgage. The judgment thereon is simply a decree of the court finding the amount due on the debt, and declaring the same to be a lien on the property described in the petition, and decreeing "that the same be foreclosed, and that the said land or so much thereof as may be necessary, be sold for the purpose of satisfying said debt and costs of these proceedings .... and that the special execution may issue for the purpose of carrying the decree herein into effect." There was no objection made, nor any point saved, as to the form of this judgment, in plaintiff's motion in arrest. And they cannot be heard    question

any irregularity in it now.   Respondents contend, however, that they are the proper judgments to be rendered on the respective counts in plaintiff's petition.   There was not rendered in this case the kind of a judgment that appellants attack. (3) There is no merit, in the third point of appellants' brief, to-wit: that the findings and the report, of the referee are not responsive to the order of 'the court; or, that the referee passed on notes not submitted to him. The only facts submitted by the court  to the referee  was the issue as to whether the note sued on  had  or had not been fully paid off and discharged, prior to the institution of this action; and if not, then to find the amount due and remaining unpaid on said note, at the time of his said findings.   The referee's report was as direct and responsive  as it was possible to have been, to-wit: "I find due on the note in suit herein, the sum of five thousand eight hundred twenty-five and seventeen one-hundredths dollars, bearing ten per cent compound interest."   The referee considered other notes not submitted to him, to the extent only, of determining whether certain payments, set up in defendants' answer, were to be credited on them, or the note sued on. This was made necessary by the averments and allegations in defendants' answer.   (4) As to appellants' fourth point, we assert no such point was saved in the defendants' exceptions to the report of the referee; neither was the court's attention called to any such error on the part of the referee, in the motion for a new trial.  If it has any merit, it can not be raised for the first time in this court.   Smith v. Haley, 41 Mo. App. 611; Johnson v. Wingfield, 35 Mo. App. 437.

MARSHALL, J.—This is a suit begun on April 3, 1890, upon a promissory note, dated March 10, 1871, for one thousand dollars, with ten per cent interest per annum from date, the interest if not paid to be compounded annually and added to the principal, made by Jacob Fry, to the order of James Wigginton, and by him indorsed to Fielden Estes.   Fry died

before the institution of the suit and the action is against his executors. Estes died since the appeal was taken, and the action has been revived in the name of William P. Stark, his executor. The petition is in two counts. The first count is an action at law based on the note, and after appropriate allegations in such actions, further alleges the institution of a prior suit on the same note in 1881 and that the plaintiff suffered a nonsuit in said prior action on March 18, 1890, and the institution of this suit on the ———— day of March, 1890. The second count is in equity, asking a judgment of foreclosure of a deed of trust, upon certain land therein described, given to secure the payment of the note described in the first count.

The answer admits the execution of the note and deed of trust, and then sets up the following defenses: First, payment; second, that in addition to the note sued on Fry executed and delivered to Estes two other notes, one dated December 1, 1866, for $1,100, one dated April 1, 1870, for $1,965.33, and also executed and delivered to Jacob Block one note dated April 29, 1874, for $1,076.24, which Block afterwards assigned to Estes, each of said notes bearing ten per cent compound interest, and then pleads various payments and an error in the amount of the note for $1,965.33, which, it is alleged, reduced that note to nine hundred dollars, whereby, it is averred, that all the notes, including that sued on, had been paid before the institution of this action, and a decree is asked declaring the note to be fully paid and cancelling the deed of trust; third, that in 1881 Estes sued Fry on the note here in controversy in an ordinary action at law, and afterwards, on August 27, 1889, he filed an amended petition in which he changed the form of his action from law into equity, and asked for an accounting as to the amount due on said $1,000 note, and for a foreclosure of the deed of trust securing the debt; that on March 18, 1890, the defendants filed a motion to strike out the amended petition upon the ground that it was not properly an amendment of the original cause of action, but

was a substitution of another and a different cause of action; that pending the consideration of the motion the plaintiff voluntarily, by leave of court, withdrew his amended petition, the court then sustained the motion, and the plaintiff, by leave of court, refiled his original petition, and then voluntarily declined to further prosecute his action and permitted the same to be dismissed. Upon this predicate the defendants pleaded that the note sued upon is barred by the statute of limitations. The reply is a general denial.

The court tried the third defense first and separately, and it being admitted that this suit was begun within one year from the date of the nonsuit of the former action, the court refused to give an instruction asked by the defendants that the amended petition in the former suit was not properly an amendment of the original petition, but was a substitution of a new cause of action, and, therefore, an abandonment of the original cause of action, and, hence, the statute of limitations was a complete defense to this action, and thereupon decided that issue in favor of the plaintiff. The defendants filed a motion for a new trial, the court overruled the motion, and defendants filed a bill of exceptions.

Thereupon, over the defendant's objection, the court referred the cause to a referee to try the issues joined by the pleadings. After a very lengthy and exhaustive hearing, during which the testimony was allowed to take a very wide range and covered many dealings, for many years, between Estes and Fry, and the evidence was not only conflicting and irreconcilable, but at times very acrid, the referee reported that there was a balance due on the note sued on of $5,825.17. The defendants filed seventeen exceptions to the report of the referee, but the court overruled them. Thereafter, the court took up the second or equity count of the petition and after a hearing and trial thereon, entered a judgment on the first count for $5,825.17, together with ten per cent interest per annum, compounded annually, from March 16, 1892, the date of the

referee's report, to the date of the judgment, which was on the twenty-third day of June, 1898, amounting to $3,319.60, and which by an arithmetical error was stated to aggregate $10,319.60, instead of the true amount of $9,144.77, which thereby made the judgment on its face excessive in the sum of $1,174.83, and also entered a decree of foreclosure of the deed of trust as prayed for in the second count of the petition, and ordered the land to be sold, and after the payment of the expenses, the sum of $10,319.60 to be applied in payment of the note.

From this decree the defendants appealed.

## I.

This remarkable controversy has had an unusual career, and this judgment illustrates how interest, compounded annually, can be made to run, even while the maker of the note sleeps, until it exceeds by many times, the amount of the original debt. The note is for $1,000, and is dated March 10, 1871. One hundred dollars interest was paid thereon on March 10, 1872, and a like amount on March 10, 1873. These are the only credits indorsed on the note. In June, 1881, suit was brought on the note, in the Louisiana Court of Common Pleas. The venue was changed, first, to St. Louis county and, afterwards, to Ralls county. It appears to have stood still from the time it got into the Ralls Circuit Court until March 18, 1890, when the plaintiff suffered a nonsuit. This action was then begun on April 3, 1890, in Pike county. In September, 1891, it was tried in the circuit court on one feature of the case, to-wit, the statute of limitations; a judgment on that issue was entered for the plaintiff, a motion for a new trial was filed and overruled, and a bill of exceptions filed. About the same time the cause was referred to a referee to try the issues joined. The referee filed his report very promptly on March 16, 1892, and the defendants filed their

exceptions thereto on March 19, 1892.    There the matter rested for over six years, and until June 23, 1898, when the exceptions were overruled and the judgment entered.   When the referee filed his report in March, 1892, he found that the debt had increased from one thousand dollars to five thousand, eight hundred and twenty-five dollars and seventeen cents, and from the date of the referee's report until the date of the judgment on June 23, 1898, the court added as interest, $3,319.60 more to the $5,825.17.    Both of the parties litigant have died, but the compound interest if still added would make the judgment amount to over twelve thousand dollars, and the controversy has been in court over twenty years. Counsel are disagreed as to the nature of the action, whether it is partly at law and partly in equity, or wholly in equity. The defendants' counsel insist that the action is made, by the petition and answer, one for an equitable foreclosure, and therefore the personal judgment is improper, and that the findings of fact are open to review in this court; whereas, plaintiff's counsel claim that the first count of the petition is an action at law upon the note, and the second count of the petition is in equity for a foreclosure of the deed of trust to pay the amount found to be due on the note, and that the defenses of payment and the statute of limitations are legal defenses, and the accounting is the only equitable feature of the answer.   The court tried the first count as a court of law, and the second count as a court of equity, entering, however, only one final judgment, and in so doing was clearly right.

## II.

The first point open to review in this court is the ruling of the trial court upon the plea of the statute of limitations. The note is dated March 10, 1871.   The last credit on the note is March 10, 1873.   The former suit was begun in June, 1881.   The amended petition was filed on August 27, 1889.

The nonsuit was suffered on March 18, 1890. This action was begun on April 3, 1890. The former suit was, therefore, begun within the ten years allowed by section 4272, Revised Statutes 1899. This suit was begun within one year after the nonsuit was suffered, and therefore was within the time limited by section 4285, Revised Statutes 1899. But the defendants claim that the amended petition filed in the former suit was an abandonment of the original suit and, hence, the one year limited by section 4285 began to run from the date of the filing of the amended petition and not from the date the nonsuit was suffered. It is true as contended that the amended petition did not constitute an amendment, but was an attempted substitution of a new cause of action. The action originally was a plain suit at law on a promissory note. The amended petition substituted a bill in equity for an accounting and a foreclosure of the deed of trust. The statute does not contemplate such a course, and the defendants properly moved to strike out the amended petition. The plaintiff then by leave of court withdrew his amended petition. The record shows that after this was done the court sustained the motion to strike out, but what effect this had it is difficult to see, for as the amended petition had already been withdrawn, by leave, there was nothing left for the motion to strike out to operate upon. The status then was, the parties were in court, without any pleadings. The attempt to amend from law into equity had failed. The cause was still in a court of law. The court therefore properly restored the original status by permitting the original petition to be filed, and thus the attempted injury to the defendants was prevented and they were left where they were before the attempt to so amend was made. The defendants can not complain of this because they were not damaged and because it was upon their motion that this result was brought about. The nonsuit then followed, and this suit was begun within one year thereafter. The statute (sec. 4285, R. S. 1899) provides: "If any action shall

have been commenced within the times respectively prescribed in this chapter, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed," etc. The one year here allowed means one year after the judgment is entered for a nonsuit, in arrest, or for a reversal, and this is true whether such judgment is entered in the trial or appellate court. [Chouteau v. Rowse, 90 Mo. 191; Hewitt v. Steele, 136 Mo. 327.] So that this suit was begun within one year from the date on which the nonsuit was suffered, and, hence, is not barred by limitation. However, the same result would follow even if it was true, as defendants contend, that the one year commenced to run on the date when the amended petition was filed, for that was on August 27, 1889, and this suit was begun on April 3, 1890, which was within one year. But as shown, this contention is untenable. There was no error in the ruling of the trial court upon this point.

## III.

The next proposition involved is whether the note sued on was paid before the institution of this action.

In the answer, thirty-three payments are averred prior to June 1, 1881, aggregating $9,647.98. It will be noted that the answer also sets up three other notes made by Fry and held by Estes, for $1,100, $1,076.24 and $1,965.33, respectively, and these notes bear indorsements of various payments aggregating $2,908.66. The referee heard evidence as to the status of these three notes, as well as evidence as to the note in suit, and also heard evidence as to many other dealings between Estes and Fry, not in issue in this case, with the result

that, of the thirty-three payments alleged to have been made on the note in suit, the referee found that the 4th, 5th, 18th, 19th, 20th, 22d, 24th, 29th, and 30th, payments claimed, aggregating $2,786.66, had been made but had been and were properly credited upon said other three notes and, therefore, could not be allowed as credits upon the note sued on. The referee, however, found that Fry is entitled to credit for the following payments alleged in the answer:

|  |  |  |
|---|---|---:|
| 6th payment, | May 15, 1872 | $   220.00 |
| 7th payment, | May 17, 1872 | 200.00 |
| 11th payment, | June 1, 1874 | 750.00 |
| 15th payment, | Feby. 1, 1875 | 150.00 |
| 16th payment, | Mch. 1, 1875 | 200.00 |
| 25th payment, | July 12, 1878 | 30.00 |
| 26th payment, | Aug. 1, 1879 | 200.00 |
| 27th payment, | Sept. 1, 1878 | 11.00 |
| 31st payment, | Sept. 1, 1880 | 4.40 |

Total ...... ...... ....................\$1,765.40

The referee then computes interest at ten per cent compounded on those credits from the date of their respective payments until May 10, 1881, amounting to $1,587.85, and adds the interest to the credits, making the credits with interest compounded annually, amount to $3,353.55. From this the referee improperly deducted the sum of $355.25 which he found Fry owed Estes on open account, but which is not involved in this suit, and in this way reached the conclusion that Fry is entitled to a net credit of $2,998.30.

The referee then found the amount Fry owed Estes on the other three notes, not sued on, and applied the $2,998.30 credits so found upon said other three notes, leaving the sum of $12,409.16, principal and compound interest, still due on them, and gave no credit at all upon the note sued on. Then

he takes up the note sued on and disposes of the case in these words:

"Amount due on note in suit as per Tinsley's count
    of May 10, 1881, which I find correct........$2,179.29
    Int. to June 1, 1881, 20 days............    12.11

                                 $2,191.40
    Deduct payment admitted in reply........   110.00

    Balance due June 1, 1881................$2,081.40
    Int. 10 per cent compound, 10 yrs., 9 mos., 15
        days, to March 16, 1892 ............ 3,743.77

    Amount due on note in suit ............$5,825.17"

And he therefore recommended a judgment for $5,825.17, and after his report remained pending for over six years, the trial court confirmed it, added $3,319.60 compound interest to the $5,825.17, and entered judgment for $10,319.60, which, as hereinbefore pointed out, was an error on its face of $1,174.83.

The referee nowhere sets out "Tinsley's count" by which he reached the conclusion that on May 10, 1881, the balance due on the note in suit amounted to $2,179.29. But a simple calculation shows that this result was attained by adding to the face of the note interest at ten per cent, compounded annually, from the date of the last interest indorsed on the note, to-wit, March 10, 1873, to May 10, 1881.

In other words, the referee first applied on the other three notes the sum of $2,908.66, which Fry had paid and which Estes had indorsed on those notes, and then he found that Fry had made other payments, which, with compound interest, amounted to $3,353.55, and from this amount he deducted $355.25 which he found Fry owed Estes on open

account, which was not pleaded or claimed, and thus found that Fry was entitled to a net credit of $2,998.30. The referee then figured up the balance due, with compound interest added, on the other three notes and found it to be $7,408.92. He then applied the whole net credit of $2,998.30 upon that balance due on the other three notes, and found that it left a balance due on those three notes of $4,410.62. He then computed compound interest on that sum from May 10, 1881, to March 15, 1892, and ascertained that such interest amounted to $7,998.54, and he added that sum to the $4,410.62, and found the balance due on those three notes to be $12,409.16. Having thus applied all the payments made by Fry to the other three notes and the open account, and having settled all the matters not directly involved in this suit, the referee then took the note in suit and added to the principal the interest thereon at ten per cent compounded annually, from March 10, 1873, to May 10, 1881, and found that on May 10, 1881, there was a balance due on the $1,000 note in suit of $2,179.29. To this he added interest to June 1, 1881, twenty days, $12.11, making the balance due June 1, 1881, $2,191.40. From this sum he deducted $110, which the plaintiff's reply admitted should be credited on this note, and thus found the balance on June 1, 1881, to be $2,081.40. He then added, "Int. 10 per cent compound, 10 yrs., 9 mos., 15 days, to March 16, 1892, $3,743.77," to the $2,081.40, and arrived at the conclusion that there was due on the note in suit $5,825.17.

No explanation is given for applying all the payments upon the other three notes and upon the open account. The other three notes were dated December 1, 1866, for $1,100, April 1, 1870, for $1,965.33, and April 2, 1874, for $1,076.24. Thus it will be seen that while two of those notes were executed before the note in suit, one of them was not executed until more than three years after the note in suit. This application is the more in need of explanation, inasmuch as Estes had not applied these payments upon any of the other notes,

but, on the contrary, Estes had applied and indorsed upon the note of December 1, 1866, for $1,100, two credits, one on August 25, 1871, for $550, and the other on March 21, 1873, for $25; and upon the note for $1,965.33, dated April 1, 1870, the following:   July 1, 1875, $633; October 28, 1875, $200; August 1, 1875, $225; February 14, 1880, $534; May 31, 1881, $85.25; and upon the note for $1,076.24, dated April 29, 1874, the following:   June 30, 1876, $25; November 5, 1876, $146.66; November 10, 1877, $150; June 18, 1878, $36.15; May 3, 1880, $298.60.   It is only fair to assume, therefore, that Estes had applied upon those three notes all the credits they were entitled to.   At any rate Estes did not apply any of the $1,875.40 which Fry paid between March 10, 1871, and May 10, 1881, upon any of the other three notes nor upon the open account, and the referee ought not to have so applied it.   There is another grave reason why the law should not apply these payments upon the three notes or upon the open account.   Those three notes and the open account were all barred by limitation when this suit was begun and it would be manifest injustice to Fry to apply those payments to those notes and that account and thus revive them.   Estes might have so applied them and thereby saved them from the bar of the statute of limitations but as he did not do so the law will not now do it.   [Beck v. Haas, 111 Mo. 264, l. c. 270.]   As the note in suit was the only obligation from Fry to Estes that was not barred by limitation, and as Fry did not direct the application of those payments when made, and as Estes did not make the application, the law will make the application as justice and equity may direct, that is, to the note in suit.   [Gantner v. Kemper, 58 Mo. 570; Waterman v. Younger, 49 Mo. 415; McCune v. Belt, 45 Mo. 181; Draffen v. Boonville, 8 Mo. 395; Middleton v. Frame, 21 Mo. 412; Beck v. Haas, 111 Mo. 264; Brown v. Brown, 124 Mo. 79; Benny v. Rhodes, 18 Mo. 147.]

The note in suit is dated March 10, 1871.   It bears only

two indorsements of payments, to-wit, March 10, 1872, $100, and March 10, 1873, $100. But the referee finds that payments were made as follows: May 15, 1872, $220; May 17, 1872, $200; June 1, 1874, $750; February 1, 1875, $150; March 1, 1875, $200; July 12, 1878, $30; August 1, 1879, $200; September 1, 1878, $11, and September, 1880, $4.40.

The application of these payments, together with the $110 admitted by the reply, upon the note in suit, not only satisfied the interest as it fell due, thereby preventing it being compounded, but is sufficient also to more than pay the note in full, for the note with ten per cent, simple interest, only amounted to $1,816.66 on May 10, 1881, while the payments, with the $110 admitted by the reply, aggregate $1,875.40.

Upon these facts, which appear from the findings of fact by the referee, it is manifest that the referee and the trial court erred in matters of law, and that the note sued on has been fully paid.

The judgment of the circuit court is therefore reversed, and because no good purpose could be subserved by remanding the cause, judgment is hereby entered here for the defendants, and it is further decreed that the note in suit be declared satisfied and that the deed of trust upon the land in question be cancelled and satisfied and the land discharged from the lien thereof. All concur.